## Case No. 6,334.

### The HELEN R. COOPER.

### The R. L. MABEY.

[7 Blatchf. 378.] [1]

Circuit Court, E. D. New York.    June 18, 1870.[2]

COLLISION—NEGLIGENCE—AMENDED ANSWER—EVIDENCE.

1. Where a vessel is lying properly moored at the side of a wharf, at some distance within the outer end thereof, the fact that she is injured by being run into by another vessel, is prima facie evidence of fault in the latter, and throws upon her the burthen of excusing such fault.

2. Where a steam-tug and a ship in tow of her are both of them sued for the injury caused to another vessel by her being run into by the ship, and the answer put in by the tug is not consistent with an answer first put in by the ship, and an amended answer put in by the ship is not consistent with the answer first put in by the ship, each of the two answers put in by the ship being sworn to by the same person, such inconsistencies are to be taken into consideration in passing on the question of liability for the injury. In this case, the tug and ship in tow of her were both of them *held* liable for an injury caused by the striking of the ship against another vessel lying moored at a wharf.

3. Where witnesses, although otherwise unimpeached, are testifying under circumstances calculated to create a strong bias, and they state what is, in its nature, incredible, their testimony is not necessarily to be believed.

[Cited in United States v. Borger, 7 Fed. 198.]
[See Andrews v. Hyde, Case No. 377.]

[Appeal from the district court for the United States for the Eastern district of New York.]

In admiralty.

Robert D. Benedict, for libellants.

Edwin W. Stoughton and Charles Donohue, for claimants.

WOODRUFF, Circuit Judge. On the 17th of February, 1866, the ship J. F. Chapman, owned by the libellants, was lying on the north-eastwardly side of pier No. 45, East river, her bow towards the shore and her stern twenty feet inward from the end of the wharf. In that position she was run into by the ship Helen R. Cooper, which came in past the pier next above, head on, nearly at right angles to the Chapman, and broke in her side, doing great damage. The Cooper having been at that time in tow of the steam-tug R. L. Mabey, the libellants proceed against both ship and tug, charging both with negligence and misconduct, and have obtained a decree in the district court against both vessels [Case No. 6,333], from which the claimants of both vessels have appealed. On the trial in this court, no other evidence was produced than the testimony given in the district court, and the question

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Affirming Case No. 6,333. Decree of circuit court affirmed in 14 Wall. (81 U. S.) 204.]

before me is, in effect—Are the conclusions of the court below sustained by the evidence? There are no questions of law involved, in respect to which there is any dispute or difference between the counsel. The sole defense, stated in general terms, is, that the collision was caused by inevitable accident. The case has been very fully and ably discussed by counsel on both sides, and the testimony is quite voluminous. I have examined it with great care, and have been aided by elaborate written briefs. But I am compelled to confine myself to stating very briefly my conclusions.

The bare statement of the fact of injury received by the Chapman while she was lying properly moored to her wharf, at a distance to twenty feet inward from the end thereof, is enough, prima facie, to establish her right to recover from those who were concerned in the movement of the Helen R. Cooper, which was thrust with violence against her side. The presumption of fault on their part is clear and not merely speculative. The burthen is at once cast upon them to excuse it.

In judging of the truthfulness, good faith and validity of the excuse which is relied upon, it is not only competent, but it is significant, to observe, that the claimant of the tug, in an answer put in by him at the very outset of the controversy, when the circumstances were recent, averred, that the master of the tug, before he attempted to tow the Cooper, declared to the agent of the latter, that "it was not safe to proceed to sea in that condition of the weather and tide;" that, after the tug made fast to the Cooper, an attempt being insisted upon by such agent, the tug acted under the direction of the pilot on the Cooper, but the Cooper was herself mismanaged in various particulars specified, in such wise that it was impossible for the tug to keep her off the New York shore; and that the damage to the Chapman "was occasioned solely by the negligence, mismanagement and want of care and skill of the persons in charge of the said ship Helen R. Cooper." Here, it will be observed, is not a word or pretense of inevitable accident, or that ice or any other obstacle even contributed to prevent the towing of the ship in a proper direction.

The claimants of the ship, on the other hand, denying all negligence, &c., on her part, alleged, in their answer, that, after she had been towed from her dock on the Brooklyn side, near the Navy Yard, stern foremost, into the stream, and when she was in the act of turning so as to head down the river, she and also the tug were unexpectedly caught in an immense field of floating ice, which, in spite of the efforts of the tug, set both of them towards the New York shore; that, finding that the said field of ice was too powerful for the steam tug to control the ship, both anchors of the ship were let go; that, notwithstanding this, the ice carried

the ship and the tug across and down the river, so that the ship, having finally got pointed down the river, was carried by the ice, so that her bows were carried into pier No. 45, and into the side of the Chapman; that it was a proper time to go to sea and the effort was made in a proper manner and under the care of a skilful pilot; and that the injury was caused in the manner stated, and was an inevitable accident, and, if not, still was caused by no fault of the Cooper. About six months later, the claimants of the Cooper, put in, by way of amendment, an entirely new answer, in which they not only abandon the theory that they were unexpectedly caught in an immense field of floating ice, which deprived the tug of the control of the ship, and which carried both her and the tug over to the New York side, and carried the ship into the Chapman, but directly and in terms contradict such former answer and, in substance, allege that it was false. Thus, they say, that, when the ship was towed out of her dock, "there was considerable floating ice on the Brooklyn side of the East river, but the river was clear for a considerable distance out on the New York side;" that, owing to the floating ice, the ship was turned with more difficulty, but the tug "had got the ship's head turned down the river, angling towards the New York shore, and with most of the ship in clear water, free from ice;" that, while the tug was thus successfully towing the ship, and when the ship was entirely under the control of the tug, a ferry-boat suddenly and improperly crossed the bows of the tug, and caused her to slow, to prevent striking the ferry-boat, thus slacking the hawser and causing her to lose control of the ship; that the ship, under the impetus of her then headway, shot ahead towards the piers; and that both of her anchors were then let go, but she overran her anchors, dragged them both, and came upon the Chapman, thus doing the damage, &c.

In view of this mass of inconsistency and contradiction interposed for the defence of these two vessels, I think no intelligent and just mind can avoid the reflection, that there is much insincerity and untruthfulness in the attempt made to exculpate them; and when to this is added the fact, now conceded, that the Cooper has assumed the entire defence, and the steam-tug has made no effort to prove the truth of the answer put in on her behalf, in which she cast the whole blame of the transaction upon the Cooper and her negligent, improper and unskilful management, and the further fact, that no witness whatever is produced from the steam-tug, to show that her navigation, or her conduct or control of the ship, was at all hindered or interfered with by any ferry-boat, when, obviously, her master and crew were most competent to speak on the subject, something more than suspicion is warranted, that the theory that a ferry-boat caused the accident has as little foundation as the allegation that the Cooper was unexpectedly caught in an immense field of floating ice, which carried her upon the Chapman.

The counsel for the claimants, with force and propriety, argued, that no condemnation should be had upon suspicion, and that their defence should not be discredited because they found it necessary to amend their answer. Concede all this, and yet, when both answers are sworn to be true by the same party, and one is in direct conflict with the other, when the claimants respectively are in conflict with each other as to the cause of the accident, when no attempt is made to prove by the tug that her movement, or her control of the ship, was impeded or hindered by any fortuitous or unavoidable occurrence or obstacle, the court cannot enter upon the examination of the testimony of the managers of the ship, without great distrust of their credibility. If, nevertheless, the claimants have clearly established that the accident was inevitable, they are not to be condemned because the answers are contradictory.

In my judgment, they have failed to establish their excuse. Even if I could believe that some ferry-boat crossed the track of the tug—in regard to which the testimony is quite unsatisfactory, and the two witnesses who testify on the subject, themselves under heavy responsibility in this matter, do not agree in regard to its course—the defence would be by no means disembarrassed. The passing of ferry-boats to and fro across the East river is not an unusual or an unexpected occurrence. There is probably not one minute between sun-rise and sun-set when there are not a considerable number in the very act of crossing in different directions, and those who navigate the river must be taken to know it, and must be prepared for it; and they are not at liberty to put themselves in such situation that, by due care and caution, they cannot avoid injury to themselves or others from that cause, provided the ferry-boat is in no fault. Here, the proof does not show fault in the ferry-boat, if it be not, indeed, doubtful whether a ferry-boat had any connection with the accident.

The steam-tug, when she undertook to tow the Cooper to sea from her berth near the navy yard, did so in view of all the ordinary risks of navigation through the river, and was bound to be suitably prepared to encounter them, in her effort to control the ship for that purpose; and she further did so in view of the presence of so large a collection of floating ice on that side of the river, in that state of the tide, that it was with difficulty she herself crossed alone to make the effort. To this the witnesses for the claimants testify. The Cooper, in placing herself in charge of the steam-tug, to be towed in the manner she was, did so knowingly, intentionally, and in view of the same risks and hazards, then present or like-

ly to arise, which, as above stated, were in view of the tug which took such charge. It is not shown that they met with any impediment to the safe conduct of the ship of which they were not fully apprised, or which they had not reason to expect when they started. If, then, the state of the river was such, that it was not safe to undertake the towing out when the ebb tide was running strong and had accumulated ice in great quantities in that part of the river, they ought to have known it, and it was want of skill and mismanagement to make the attempt. If, on the other hand, it is just to infer, from the testimony of other pilots, who took vessels to sea that day from other piers, lower down the river, and from the New York side, which is sworn to have been clear of ice, that it was safe and prudent to make the effort then, since they experienced no unusual or extraordinary other impediment, why was it not safely accomplished? If, though, under ordinary circumstances, more than one tug was wholly unnecessary, one tug could not, on that day and in that mass of ice, control the ship, so that she could go to sea in safety, she should have employed two tugs. If, on the other hand, the one was sufficient to manage the ship, the circumstance that they met a crossing ferry-boat, when they must or ought to have expected to meet several, does not excuse them. Indeed, such an occurrence, if, indeed, the presence of a ferry-boat deprived the tug of her control of the ship, tends more strongly than the mere opinions of any witnesses, to show that the ship ought not to have attempted to move from her berth through the floating ice, without being under more effective control. And, again, if it be true that the ice so hindered the management of the ship that she could not be turned and headed in her proper course down the river sooner than she was, she should have been taken farther up, and into the broader part of the river, and turned, before running down upon the wharves on the New York side.

But, I am not at all satisfied that the ship might not have been turned sooner if she had been properly managed. The proof shows, that the great struggle was not to keep her up against the tide until she was turned so as to come down in the middle of the stream, but to get her over to the clear water on the New York side as soon as possible; and the result was, that both vessels were carried down by the tide, and, when they reached the clear water, the Cooper was headed on and ran into the Chapman. It is true, that the master and the pilot of the Cooper say that her helm was kept hard a-starboard; and it is insisted that the court is bound by the testimony of unimpeached witnesses. That is subject to some qualification. Where witnesses otherwise unimpeached are testifying under circumstances calculated to create a strong bias, and they state what is in its nature incredible, their testimony is not necessarily to be believed. Now, it is shown that the river on the New York side was clear of ice. Is it, then, credible, that the Cooper, emerging from the ice with "her head turned down the river, angling towards the New York shore," would or could, "with the impetus the said ship had on, have shot ahead towards the piers," and actually have passed several hundred feet, or nearly half the width of the river, and struck the Chapman, if her helm had been during all that time hard a-starboard?

I do not question the intelligence or good judgment of the numerous pilots who testify that it was safe to take ships to sea on that day, and that it was prudent and proper to take the Cooper out of the dock in the manner it was done, or that one tug like the Mabey is sufficient for the purpose. But I cannot overlook the fact, that, so far as the presence of ice created embarrassment, it was greater up the river where the Cooper lay. The places from which they took vessels were on the New York side, and lower down, or on the North river, of the state of which in respect to ice we are not informed; and they testified from their experience on that day. Nor can I fail to see, also, that the more conclusively it is shown that the state of the river was suitable and the power of the Mabey competent to the undertaking, the greater is the assurance that it was by bad management, on the part of one or both of the vessels, in not turning the head of the ship down the stream sooner, or in not sufficiently guarding against the ordinary incidents of the passage, or in not keeping the helm of the ship a-starboard, that the accident was caused.

It is saying little to add, that the claimants have failed to remove the burthen which rested upon them to show that this accident happened by inevitable accident, or without fault or negligence on their part.

The decree must, therefore, be affirmed, with costs.

[NOTE. From the decree the owner of the Mabey appealed to the supreme court, and moved for a commission to take further evidence to be read in court. The motion was denied in an opinion by Mr. Justice Nelson. 10 Wall. (77 U. S.) 419. Another motion of the same nature was made subsequently,—13 Wall. (80 U. S.) 738,—the ground of it being that the sureties upon the bond (Case No. 6,335) were insolvent. The motion was denied in an opinion by Mr. Justice Clifford.

[Both the owners of the tug and of the ship thereupon appealed to the supreme court. In an opinion by Mr. Justice Clifford the decree of the circuit court was affirmed. 14 Wall. (81 U. S.) 204. "Inevitable accident" must be understood to mean a collision which occurs when both parties have endeavored, by every means in their power, with due care and caution, and a proper display of nautical skill, to prevent the occurrence of the accident, and where the proofs show that it occurred in spite of everything that nautical skill, care, and precaution could do to keep the vessels from coming together.]