## UNITED STATES *v.* BORGER.

(*Circuit Court, S. D. New York.* May 19, 1881.)

1. INFORMATION—REFUSAL TO PLEAD.

The refusal of a defendant to plead to a criminal information will not defeat the jurisdiction of a circuit court.

2. SAME—ENTRY OF PLEA.

In such case the entry of a plea of not guilty, under the direction of the court, is a mere matter of form, and amounts to no more than ordering the trial to proceed as if such plea were entered.

3. SAME—" INDICTED "—REV. ST. § 1032.

The word "indicted," in section 1032 of the Revised Statutes, authorizing the court to enter a plea of not guilty when the defendant stands mute, is fairly to be construed to include an information.

4. JUROR—PREJUDICE.

Prejudice against a person engaged in an illegal business, arising solely from the fact that he was engaged in such business, does not disqualify a juror from sitting upon the trial of such person for the exercise of such unlawful calling.

5. TESTIMONY—WITNESS.

Where a witness, otherwise unimpeached, testifies under circumstances calculated to create a strong bias, and he states what is, in its nature, incredible, his testimony is not necessarily to be believed.— [ED.

*William P. Fiero,* Asst. Dist. Att'y, for the United States.
*Abram J. Dittenhoefer,* for defendant.

BLATCHFORD, C. J. The defendant was convicted on a criminal information filed against him by the United States attorney, prosecuting for the United States, under section 3894 of the Revised Statutes, for unlawfully and knowingly depositing in the mail of the United States, and sending to be conveyed thereby, a circular concerning a lottery. On being arraigned on the information the defendant stood mute, and the court directed a plea of not guilty to be entered for him, and it was entered. An objection of the defendant's counsel to such action was overruled by the court, and said counsel excepted to said ruling and to said direction. The defendant now moves an arrest of judgment on the above ground. It is provided by section 1032 of the Revised Statutes as follows:

"When any person indicted for any offence against the United States, whether capital or otherwise, upon his arraignment stands mute, or refuses to answer thereto, it shall be the duty of the court to enter the plea of not guilty on his behalf, in the same manner as if he had pleaded not guilty thereto. And when the party pleads not guilty, or such plea is entered as aforesaid, the cause shall be deemed at issue, and shall, without further form or ceremony, be tried by a jury."

This section is based on the act of April 30, 1790, § 30, (1 St. at Large, 119,) the act of March 3, 1825, § 14, (4 St. at Large, 118,) and the act of March 3, 1835, § 4, (Id. 777.) The act of 1790 related to an indictment for treason, or one for any offence made capital by that act, and authorized the court to proceed to the trial of the person standing mute, as if he had pleaded not guilty. The act of 1825 related to an indictment for any offence not capital, and gave a like authority. The act of 1835 related to an indictment for any offence, and was in the terms of section 1032 of the Revised Statutes. The word "information" is not found in any of the statutes.

It is contended for the defendant that the court had no jurisdiction to try him, because he was tried on an information and stood mute, and the court had no power either to enter a plea of not guilty for him, or to proceed to his trial as if he had pleaded not guilty. It is contended that this statute alone can be looked to as the source of authority; that by mentioning an indictment it excluded an information; that the word "indictment" cannot be construed to include "information;" and that the case is one of a *casus omissus*, so that no person who chooses to refuse to plead to a criminal information can be tried upon it. Provisions of statute are referred to which mention an information as well as an indictment in the same enactment, and from this it is argued that, as an indictment is mentioned in the present instance, and not an information *eo nomine*, the case of a person standing mute on an information is not provided for.

By subdivision 20 of section 629 of the Revised Statutes, cognizance of all crimes and offences cognizable under the authority of the United States is given to the circuit courts. The offence in the present case is one which can be prose-

cuted by a criminal information. Article 3, § 2, of the constitution provides that "the trial of all crimes, except in cases of impeachment, shall be by jury;" and article 6 of the amendments to the constitution provides that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed." If the United States have a right to prosecute the defendant for the offence alleged, by a criminal information instead of an indictment, they have the right to try him for such offence, with a view to punish him if he is convicted. He has a right to be tried by a jury, and by an impartial jury, and to have the benefit of the other safeguards provided by the constitution and the laws. But he has no right to defeat a trial by saying that he will not plead to the information. The court has power to try a person who refuses to plead to an information, or who wilfully stands mute when arraigned on it, without entering for him a plea of not guilty, and has a right to proceed in such trial as if there were a plea of not guilty, even though no statute of the United States specifically prescribes such mode of procedure in the case of an information. It would have this power under the constitutional and statutory provisions before referred to, in the case of an indictment, even if there were no statutory provision in regard to standing mute on an indictment. So it has like power on an information, without any such provision in regard to an information.

The question arose in regard to an indictment in the circuit court of the United States for the district of Maryland, in 1818, in *U. S.* v. *Hare*, 2 Wheeler's Cr. Cas. 283, before Mr. Justice Duvall and Judge Houston. The defendants were indicted under section 19 of the act of April 30, 1810, (2 St. at Large, 598,) for robbing a mail-carrier. The punishment was death. On being arraigned they stood mute. The act of 1790 was the only statute on the subject. The offence was one not made capital by that act. It was contended for the defendants that the court had no power to enter a plea of not guilty for them, or to try them. It was urged that the court must ascertain by a jury whether the

muteness arose *ex visitatione Dei* or *ex malitia;* that if it were found that the muteness were from the visitation of God, the court could proceed to trial as if there were a plea of not guilty; and that if it were decided that the muteness was *ex malitia,* and the offence were a felony, there could be no trial, because no issue and no conviction without a trial, because the offence was not of the highest degree, as treason, or of the lowest degree, as petit larceny. The question was thoroughly discussed by eminent counsel, and the court, taking a broad and comprehensive view of the question, held that it had no doubt of its power to proceed to the trial of the accused; that in view of the provisions of the constitution that the trial of all crimes, except in cases of impeachment, shall be by jury, and that every person shall have a fair and impartial trial by jury, in a criminal prosecution, and in view of the cognizance given to the circuit court of all crimes and offences cognizable under the authority of the United States, the accused could not, by any management, evade a trial by jury; that the prescription of the punishment implied conviction, and that implied a trial by a jury, conducted in a manner provided by law, and that the principle of the strict construction of a penal statute could not require it to be so construed as to prevent a trial altogether. The court ordered the trial to proceed as if the plea were not guilty.

The foregoing view is consonant with reason, and with the only proper administration of the criminal law. In the present case the court directed the plea of not guilty to be entered, and that was done. This was a matter of form, and was no prejudice to the defendant, and amounted to no more than ordering the trial to proceed as if such plea were entered. Irrespective of the foregoing views, the word "indicted," in section 1032, is fairly to be construed to include an information. An information generally differs in nothing from an indictment in its form and substance, except that it is filed by the proper law officer of the government, *ex officio,* without the intervention or approval of a grand jury. 2 Story on Const. (4th Ed.) § 1786. In *The Queen* v. *Steel,* L. R. 2 Q. B. Div. 37, 40, Lord Coleridge says that a criminal informa-

tion is a criminal cause or matter, only differing in mere form from an indictment, the queen's coroner preferring the information instead of the jurors presenting a bill; but, to all intents and purposes, the one being as much a criminal matter as the other.

In *Bailey* v. *Kalamazoo Publishing Co.* 40 Mich. 247, 255, it is held that under a justification in a suit for a libel there is no substantial variance between an allegation that a man has been indicted, and proof that he has been prosecuted and convicted in a justice's court on a criminal information.

A motion for a new trial is made on the ground of alleged errors at the trial. One Luddington, having been called as a juror, was examined. He testified that he could not say positively whether he was a member of the Society for the Suppression of Vice. He continued:

"I don't think I was ever proposed. I know Anthony Comstock indirectly, slightly. I have met him at his office in Nassau street, in this city, and went there to see him in regard to some business of the society. I have not contributed to the society recently, but I have, perhaps, within two years given money to it. It was not within a year, but perhaps within two years, I contributed this money. I know the society is engaged in prosecuting men in the lottery business from what I have seen in the papers during the last year or two. I know Mr. Comstock is the agent of the society to which I contributed funds. I think I could find a verdict fairly on the evidence if it should appear on the trial that the defendant was engaged in the business of selling lottery tickets. I think I could give the testimony of the defendant proper weight if it was a question of credibility between him and Mr. Comstock. I could also give the testimony of the defendant proper weight if it became a question of veracity between him and Mr. Comstock, it being proven that defendant was engaged in selling lottery tickets. I don't know that I should give the testimony of Mr. Comstock more weight than I should that of the defendant, he being proved to be engaged in the lottery business. When I say I don't know, I mean that I should give the evidence of the man I supposed was telling the truth more weight than the one I thought was not. I think the fact that the defendant was engaged in the lottery business would influence me in giving his testimony less weight than that of Mr. Comstock if it was a question of veracity between them, because I would not like his business."

The defendant's counsel thereupon challenged the juror for favor. The challenge was overruled, and the defendant's counsel excepted. It is contended for the defendant that the challenge should have been sustained; that while a prejudice

against crime does not disqualify a person from being a juror, the present case was one of a prejudice against the person on trial, and the juror was not impartial; and that the evidence showed not only a prejudice against the lottery business, but a prejudice against the defendant by reason of his being engaged in that business. This is an unsound view. Every good citizen, fit to be a juror, has necessarily, and ought to have, a prejudice against crime; and a prejudice against a person who is engaged in a business prohibited by law, as is the selling of lottery tickets by the law of the state of New York, such selling being made a crime, (1 Rev. St. 666, § 29,) such prejudice arising solely from the fact of his being engaged in such business, is no more than a prejudice against the crime involved in being engaged in such business. If it were to be regarded as a prejudice against the person, no jury could ever be obtained to try a person indicted for any crime. This case falls within the principle of the case of *U. S.* v. *Noelke*, 1 FED. REP. 426, decided by this court.

The juror showed himself to be competent. All that he said was that, if a question of veracity arose between the testimony of the defendant and that of Mr. Comstock, he thought that the fact that the defendant was engaged in the lottery business would influence him in giving the testimony of the defendant less weight than that of Mr. Comstock. Although a question arose as to whether the jury would believe the testimony of the defendant, no question of veracity arose between the defendant and Mr. Comstock on the trial. It did not appear that the defendant was a member of the society referred to. He had not contributed any money to it for over a year. The case is not within the *dicta* in *Commonwealth* v. *Eagan*, 4 Gray, 18. The court did not err in refusing to direct a verdict for the defendant. The question was one for the jury, and was presented to the jury in a proper manner by the court. There was no exception to the charge. It is contended that the jury were bound to believe the testimony of the defendant, it being uncontradicted.

In *The Helen R. Cooper*, 7 Blatchf. 378, it was said by Judge Woodruff that where a witness, otherwise unimpeached,

is testifying under circumstances calculated to create a strong bias, and he states what is, in its nature, incredible, his testimony is not necessarily to be believed. The credit of testimony is left to the jury, who are judges of the probability or improbability, credibility or incredibility, of the witness and his testimony. The credit due to testimony is to be measured, in part, by the interest or bias of the witness, which may sway him to pervert the truth, and by his manner and deportment in delivering his testimony; and a jury, in weighing testimony, have a right to consider the consistency of the different parts of a narration, and the possibility and probability, or impossibility or improbability, of the matters related. Best on Evidence, 16, 18, 217. Even if the jury believed that the defendant was absent from his place of business at the time he says he was absent, they may have convicted him, and properly, on the ground that it was incredible that he gave in good faith the instructions to which he testified, not to "give any letters out at all," because "it was against the law," his regular business being to violate the law by selling lottery tickets.

It was not error to refuse to charge the jury that they must believe the testimony of the defendant as to his absence and his instructions, and therefore acquit him.

The motions must be denied.

NOTE. See *United States* v. *Duff*, 6 FED. REP. 45.